# EXHIBIT A

ELECTRONICALLY FILED
Superior Court of California
County of Alameda
06/23/2025
Chad Finke, Executive Officer / Clerk of the Court
By: _____D. Harbour_____ Deputy

STRATEGIC LEGAL PRACTICES
A PROFESSIONAL CORPORATION
Rabiya Tirmizi (SBN 334508)
Email: SLPCaseDocs+SALWG2SU1LA735627Faghirzadeh@slpattorney.com
1888 Century Park East, 19th Floor
Los Angeles, CA 90067
Telephone: (310) 929-4900
Facsimile:  (310) 943-3838

Attorneys for Plaintiff:
NIMA FAGHIRZADEH

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| NIMA FAGHIRZADEH,<br><br>Plaintiff,<br><br>vs.<br><br>JAGUAR LAND ROVER NORTH AMERICA, LLC.; COLE EUROPEAN JAGUAR LAND ROVER; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:  25CV127572<br><br>Hon.<br>Dept.<br><br>**COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS**<br><br>JURY TRIAL DEMANDED |

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

Plaintiff alleges as follows:

**PARTIES**

1. As used in this Complaint, the word "Plaintiff" shall refer to Plaintiff NIMA FAGHIRZADEH.

2. Plaintiff is a resident of Alameda County, California

3. As used in this Complaint, the word "Defendant" shall refer to all Defendants named in this Complaint.

4. Defendant JAGUAR LAND ROVER NORTH AMERICA, LLC. ("Defendant" or "JLRNA") is a corporation organized and in existence under the laws of the State of Delaware and registered with the California Department of Corporations to conduct business in California. At all times relevant herein, JLRNA was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in Alameda County, California.

5. Defendant COLE EUROPEAN JAGUAR LAND ROVER ("COLE") is an unknown business entity organized and in existence under the laws of the State of California. At all times relevant herein, COLE was engaged in the business of selling automobiles and automobile components, and servicing and repairing automobiles in Contra Costa County, California.

6. Plaintiff is ignorant of the true names and capacities of the Defendants sued under the fictitious names DOES 1 to 10. They are sued pursuant to Code of Civil Procedure section 474. When Plaintiff becomes aware of the true names and capacities of the Defendants sued as DOES 1 to 10, Plaintiff will amend this Complaint to state their true names and capacities.

**FACTUAL BACKGROUND**

7. On or about June 28, 2020, Plaintiff entered into a warranty contract with Defendant JLRNA regarding a 2020 Land Rover Range Rover Sport, vehicle identification number SALWG2SU1LA735627 (hereafter "Subject Vehicle"), which was manufactured and or distributed by Defendant JLRNA.

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

8. The warranty contract contained various warranties, including but not limited to the bumper-bumper warranty, powertrain warranty, emission warranty, etc.

9. Pursuant to the Song-Beverly Consumer Warranty Act (the "Act") Civil Code sections 1790, et seq., the Subject Vehicle constitutes "consumer goods" used primarily for family or household purposes, and Plaintiff has used the vehicle primarily for those purposes. Plaintiff is a "buyer" of consumer goods under the Act. Defendant JLRNA is a "manufacturer" and/or "distributor" under the Act.

10. Plaintiff justifiably revokes acceptance of the Subject Vehicle under Civil Code, section 1794, et seq., by filing this Complaint and/or did so prior to filing the instant Complaint.

11. These causes of action arise out of the warranty obligations of JLRNA in connection with a motor vehicle for which JLRNA issued a written warranty.

12. Defects and nonconformities to warranty manifested themselves within the applicable express warranty period, including but not limited to, engine defects, transmission defects, electrical defects; among other defects and non-conformities.

13. Said defects/nonconformities substantially impair the use, value, or safety of the Vehicle.

14. The value of the Vehicle is worthless and/or *de minimis*.

15. Under the Song-Beverly Warranty Act, Defendant JLRNA had an affirmative duty to promptly offer to repurchase or replace the Subject Vehicle at the time it failed to conform the Subject Vehicle to the terms of the express warranty after a reasonable number of repair attempts.[1]

---

[1] "A manufacturer's duty to repurchase a vehicle does not depend on a consumer's request, but instead arises as soon as the manufacturer fails to comply with the warranty within a reasonable time. (*Krotin v. Porsche Cars North America, Inc.* (1995) 38 Cal.App.4th 294, 301-302, 45 Cal.Rptr.2d 10.) Chrysler performed the bridge operation on Santana's vehicle in August 2014 with 30,262 miles on the odometer—within the three-year, 36,000 mile warranty. The internal e-mails demonstrating Chrysler's awareness of the safety risks inherent in the bridge operation were sent in September 2013, and thus Chrysler was well aware of the problem when it performed the bridge operation on Santana's vehicle. Thus, Chrysler's duty to repurchase or provide restitution arose prior to the expiration of the three-year, 36,000 mile warranty. Moreover, although we do not have the actual five-year, 100,000 mile power train warranty in our record, Santana's expert testified that the no-start/stalling issues Santana experienced were within the scope of the power train warranty, which was still active when Santana requested repurchase in approximately January 2016, at 44,467 miles. Thus the premise of Chrysler's argument—that Santana's request for repurchase was outside the relevant warranty—is not only irrelevant, but wrong." *Santana v. FCA US, LLC,* 56 Cal. App. 5th 334, 270 Cal. Rptr. 3d 335 (2020).

2

**COMPLAINT; JURY TRIAL DEMANDED**

16.    Defendant JLRNA has failed to either promptly replace the Subject Vehicle or to promptly make restitution in accordance with the Song-Beverly Act.

17.    Under the Act, Plaintiff is entitled to reimbursement of the price paid for the vehicle less that amount directly attributable to use by the Plaintiff prior to the first presentation to an authorized repair facility for a nonconformity.

18.    Plaintiff is entitled to replacement or reimbursement pursuant to Civil Code, section 1794, et seq.

19.    Plaintiff is entitled to rescission of the contract pursuant to Civil Code, section 1794, et seq.

20.    Plaintiff is entitled to recover any "cover" damages under Civil Code, section 1794, et seq.

21.    Plaintiff is entitled to recover all incidental and consequential damages pursuant to 1794, et seq.

22.    Plaintiff suffered damages in a sum to be proven at trial in an amount that is not less than $35,001.00.

23.    Plaintiff is entitled to all incidental, consequential, and general damages resulting from Defendants' failure to comply with its obligations under the Song-Beverly Act.

## TOLLING OF THE STATUTES OF LIMITATION

24.    To the extent there are any statutes of limitation applicable to Plaintiff's claims— including, without limitation, the express warranty, implied warranty, and negligent repair – the running of the limitation periods have been tolled by, *inter alia*, the following doctrines or rules: equitable tolling, the discovery rule, the fraudulent concealment rules, equitable estoppel, the repair rule, and/or class action tolling (e.g., *the American Pipe rule*).

25.    Plaintiff discovered Defendants' wrongful conduct alleged herein shortly before the filing of the complaint, as the Vehicle continued to exhibit symptoms of defects following JLRNA's unsuccessful attempts to repair them. However, JLRNA failed to provide restitution pursuant to the Song-Beverly Consumer Warranty Act.

**COMPLAINT; JURY TRIAL DEMANDED**

26.    By filing this Complaint, Plaintiff hereby revokes acceptance of the Subject Vehicle yet again.

### FIRST CAUSE OF ACTION

### BY PLAINTIFF AGAINST DEFENDANT JLRNA

### VIOLATION OF SUBDIVISION (D) OF CIVIL CODE SECTION 1793.2

27.    Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

28.    Defendant JLRNA and its representatives in this state have been unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of opportunities.  Despite this fact, Defendant JLRNA failed to promptly replace the Vehicle or make restitution to Plaintiff as required by Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2).

29.    Plaintiff has been damaged by Defendant JLRNA's failure to comply with its obligations pursuant to Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2), and therefore brings this cause of action pursuant to Civil Code section 1794.

30.    Defendant JLRNA's failure to comply with its obligations under Civil Code section 1793.2, subdivision (d) was willful, in that Defendant JLRNA and its representative were aware that they were unable to service or repair the Subject Vehicle to conform to the applicable express warranties after a reasonable number of repair attempts, yet Defendant JLRNA failed and refused to promptly replace the Vehicle or make restitution.  Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c).

31.    Defendant JLRNA does not maintain a qualified third-party dispute resolution process which substantially complies with Civil Code section 1793.22.  Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (e).

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19ᵀᴴ FLOOR, LOS ANGELES, CA 90067

32.    Plaintiff seeks civil penalties pursuant to section 1794, subdivisions (c), and (e) in the alternative and does not seek to cumulate civil penalties, as provided in Civil Code section 1794, subdivision (e).

## SECOND CAUSE OF ACTION

## BY PLAINTIFF AGAINST DEFENDANT JLRNA

## VIOLATION OF SUBDIVISION (B) OF CIVIL CODE SECTION 1793.2

33.    Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

34.    Although Plaintiff presented the Subject Vehicle to Defendant JLRNA's representative in this state, Defendant JLRNA and its representative failed to commence the service or repairs within a reasonable time and failed to service or repair the Subject Vehicle so as to conform to the applicable warranties within 30 days, in violation of Civil Code section 1793.2, subdivision (b). Plaintiff did not extend the time for completion of repairs beyond the 30-day requirement.

35.    Plaintiff has been damaged by Defendant JLRNA's failure to comply with its obligations pursuant to Civil Code section 1793.2(b), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

36.    Plaintiff has rightfully rejected and/or justifiably revoked acceptance of the Vehicle and has exercised a right to cancel the purchase. By serving this Complaint, Plaintiff did so again.  Accordingly, Plaintiff seeks the remedies provided in California Civil Code section 1794(b)(1), including the entire contract price. In the alternative, Plaintiff seeks the remedies set forth in California Civil Code section 1794(b)(2), including the diminution in value of the Vehicle resulting from its defects.  Plaintiff believes that, at the present time, the Vehicle's value is *de minimis*.

37.    Defendant JLRNA's failure to comply with its obligations under Civil Code section 1793.2(b) was willful, in that Defendant JLRNA and its representative were aware that they were obligated to service or repair the Subject Vehicle to conform to the applicable express

**COMPLAINT; JURY TRIAL DEMANDED**

warranties within 30 days, yet they failed to do so. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794(c).

### THIRD CAUSE OF ACTION

### BY PLAINTIFF AGAINST DEFENDANT JLRNA

### VIOLATION OF SUBDIVISION (A)(3) OF CIVIL CODE SECTION 1793.2

38. Plaintiff incorporates by reference the allegations contained in paragraphs set forth above.

39. In violation of Civil Code section 1793.2, subdivision (a)(3), Defendant JLRNA failed to make available to its authorized service and repair facilities sufficient service literature and replacement parts to effect repairs during the express warranty period. Plaintiff has been damaged by Defendant JLRNA's failure to comply with its obligations pursuant to Civil Code section 1793.2(a)(3), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

40. Defendant JLRNA's failure to comply with its obligations under Civil Code section 1793.2, subdivision (a)(3) was willful, in that Defendant JLRNA knew of its obligation to provide literature and replacement parts sufficient to allow its repair facilities to effect repairs during the warranty period, yet Defendant JLRNA failed to take any action to correct its failure to comply with the law. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages, pursuant to Civil Code section 1794(c).

### FOURTH CAUSE OF ACTION

### BY PLAINTIFF AGAINST DEFENDANT JLRNA

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

### (CIV. CODE, § 1791.1; § 1794; § 1795.5)

41. Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

42. Pursuant to Civil Code section 1792, the sale of the Subject Vehicle was accompanied by Defendant JLRNA's implied warranty of merchantability. Pursuant to Civil Code section 1791.1, the duration of the implied warranty is coextensive in duration with the

COMPLAINT; JURY TRIAL DEMANDED

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

duration of the express written warranty provided by Defendant JLRNA, except that the duration is not to exceed one-year.

43. Pursuant to Civil Code section 1791.1(a), the implied warranty of merchantability means and includes that the Subject Vehicle will comply with each of the following requirements: (1) The Vehicle will pass without objection in the trade under the contract description; (2) The Vehicle is fit for the ordinary purposes for which such goods are used; (3) The Vehicle is adequately contained, packaged, and labelled; (4) The Vehicle will conform to the promises or affirmations of fact made on the container or label.

44. The Subject vehicle was sold with one or more latent defect(s) set forth above. The existence of the said latent defect(s)constitutes a breach of the implied warranty because the Subject Vehicle (1) does not pass without objection in the trade under the contract description, (2) is not fit for the ordinary purposes for which such goods are used, (3) is not adequately contained, packaged, and labelled, and (4) does not conform to the promises or affirmations of fact made on the container or label.

45. Plaintiff has been damaged by Defendant JLRNA's failure to comply with its obligations under the implied warranty, and therefore brings this Cause of Action pursuant to Civil Code section 1794.

**FIFTH CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT COLE**

**NEGLIGENT REPAIR**

46. Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

47. Plaintiff delivered the Subject Vehicle to Defendant COLE for substantial repair on at least one occasion.

48. Defendant COLE owed a duty to Plaintiff to use ordinary care and skill in storage, preparation and repair of the Subject Vehicle in accordance with industry standards.

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

**COMPLAINT; JURY TRIAL DEMANDED**

49. Defendant COLE breached its duty to Plaintiff to use ordinary care and skill by failing to properly store, prepare and repair the Subject Vehicle in accordance with industry standards.

50. Defendant COLE's negligent breach of its duties owed to Plaintiff was a proximate cause of Plaintiff's damages.

### SIXTH CAUSE OF ACTION

### BY PLAINTIFF AGAINST DEFENDANT JLRNA

### FRAUDULENT INDUCEMENT - CONCEALMENT

51. Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

52. Plaintiff also alleges that Defendant JLRNA concealed a known defect from Plaintiff.

53. Plaintiff is informed and believes, and based thereon alleges, that the 3.0L engine and/or its related components installed in the Subject Vehicle suffer from one or more defects that can result in loss of power, stalling, engine running rough, engine misfires, failure or replacement of the engine (the "Engine Defect").

54. Plaintiff is informed and believes, and based thereon alleges, that Defendant JLRNA has refused to adequately repair certain defects and problems during the warranty period, resulting in owners like Plaintiff being stuck in the middle of the road and having to incur lodging expenses, as well as related repair to the defect.

55. The Engine Defect causes unsafe conditions in vehicles equipped with the 3.0L engine, including, but not limited to, the engine losing power while driving. These conditions present a safety hazard because they severely affect the driver's ability to control the vehicle, and substantially increase the likelihood that the engine will fail, lose power, and/or cut off during operation, thereby resulting in accidents involving property damage, personal injury and even death.

COMPLAINT; JURY TRIAL DEMANDED

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

56.    On information and belief, the Engine Defect also causes premature wear to the 3.0L engine and engine-related components, such as premature engine failure, requiring expensive repairs.

57.    Plaintiff is informed and believes, and based thereon alleges, that prior to sale of the Subject Vehicle, JLRNA knew, or should have known, about the Engine Defect through its exclusive knowledge of non-public, internal data about the Engine Defect, including: pre-releasing testing data; early consumer complaints about the Engine Defect to Defendant JLRNA's dealers who are JLRNA's agents for vehicle repairs; dealership repair orders; testing conducted in response to those complaints; and other internal sources of information possessed exclusively by Defendant JLRNA and its agents.  Nevertheless, Defendant JLRNA and its agents have actively concealed the Engine Defect and failed to disclose this defect to Plaintiff at the time of purchase of the Subject Vehicle or thereafter.

58.    Because Defendant JLRNA will not notify the public that the 3.0L engine is defective, Plaintiff (as well as members of the general public) are subjected to dangerous driving conditions that often occur without warning.

59.    Defendant JLRNA knew about, and concealed, the Engine Defect present in the Subject Vehicle, along with the Engine Defect's attendant dangerous safety and drivability problems, from Plaintiff at the time of sale, repair, and thereafter.  In fact, instead of repairing the defects in the 3.0L engine, JLRNA either refused to acknowledge their existence, or performed superficial and ineffectual repairs that simply masked the symptoms of the Engine Defect.

60.    If Plaintiff knew about these defects at the time of sale, Plaintiff would not have purchased the Subject Vehicle.

61.    As a result of Plaintiff's reliance on JLRNA and its agent's omissions and/or concealment of the Engine Defect, Plaintiff suffered an ascertainable loss of money, property, and value to the Subject Vehicle, which is *de minimis*. Additionally, as a result of the Engine Defect, Plaintiff was harmed and suffered actual damages in that the Subject Vehicle's engine is substantially certain to fail before its expected useful life has run.

9

**COMPLAINT; JURY TRIAL DEMANDED**

62. Defendant JLRNA had superior and exclusive knowledge of the Engine Defect and knew or should have known that the Engine Defect was not known or reasonably discoverable by Plaintiff before Plaintiff purchased the Subject Vehicle.

63. Plaintiff is informed, and believes and based thereon alleges that before Plaintiff purchased the Subject Vehicle, Defendant JLRNA knew about the Engine Defect through sources not available to consumers, including pre-release testing data, early consumer complaints about the engine defects to JLRNA and its dealers, testing conducted in response to those complaints, failure rates and replacement part sales data, aggregate data from JLRNA dealers, among other internal sources of aggregate information about the problem.

64. Owners of vehicles equipped with the 3.0L engine notified Defendant JLRNA, either directly through Defendant JLRNA's Customer Relationship Center or indirectly through Defendant JLRNA's authorized repair facilities. Defendant JLRNA has computer systems whereby it monitors warranty claims, communicates with its authorized dealers, and monitors the malfunctions and repair records of its vehicles.

65. Through these systems, Defendant JLRNA has detailed information regarding each time a vehicle is brought into a JLRNA dealership for repair, including but not limited to the symptoms that required the unit be brought in for service, the diagnosis of the problem, the repair authorized by Defendant JLRNA, and the work performed on the vehicle.

66. The existence of the Engine Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a vehicle equipped with a 3.0L engine. Had Plaintiff known that the Subject Vehicle was equipped with a defective engine, Plaintiff would not have purchased the Subject Vehicle equipped with the 3.0L engine.

67. Reasonable consumers, like Plaintiff, reasonably expect that a vehicle's engine is safe, will function in a manner that will not pose a safety hazard, and is free from defects. Plaintiff further reasonably expects that JLRNA will not sell or lease vehicles with known safety defects, such as the Engine Defect, and will disclose any such defects to its consumers when it learns of them. Plaintiff did not expect Defendant JLRNA to fail to disclose the Engine Defect to them and to continually deny the defect.

10

**COMPLAINT; JURY TRIAL DEMANDED**

68.    Defendant JLRNA has never disclosed the Engine Defect to Plaintiff prior to the purchase of the Subject Vehicle or at any point during ownership of the Subject Vehicle, and Defendant JLRNA has never instructed its dealerships to disclose the Engine Defect to drivers or potential purchasers or lessees of vehicles equipped with the 3.0L engine.

69.    The Engine Defect was not known or reasonably discoverable by the Plaintiff before purchase and Plaintiff did not know about JLRNA's fraudulent conduct alleged herein until Plaintiff made a reasonable number of attempts to repair the Engine Defect.

70.    Defendant JLRNA's failure to notify consumers, dealerships, or auto-technicians prevents the Engine Defect from being efficiently diagnosed. Drivers are led to believe that the problems they are experiencing with the engines in their vehicle are actually "normal characteristics" of the engine. Likewise, the lack of information makes it less likely that dealerships and auto-technicians will be able to diagnose and fix the Engine Defect or advise Plaintiff about the dangers of driving the Subject Vehicle.

71.    As a result of Defendant JLRNA's inaction and silence, Plaintiff was entirely unaware that Plaintiff purchased, and continues to drive, an unsafe and unreliable vehicle. As Defendant JLRNA knows, a reasonable person would consider the Engine Defect important and would not purchase or lease a vehicle equipped with the Engine Defect were the defect disclosed in advance.

72.    Despite Defendant JLRNA's knowledge of the Engine Defect, it continued to represent that JLRNA vehicles equipped with the 3.0L engine were of high quality and trained its dealers throughout the country to specifically tout the supposedly superior attributes of the 3.0L engine, without ever mentioning its troubling Engine Defect. Defendant JLRNA continued to conceal its knowledge of the defective 3.0L engine in its marketing materials, relied upon by Plaintiff.

73.    At all relevant times, JLRNA was aware of its inability to repair the defects in the 3.0L engine.

11

**COMPLAINT; JURY TRIAL DEMANDED**

74.    Despite having this critical knowledge, JLRNA failed to disclose it to its consumers, and continuously treated the symptoms rather than the underlying "root cause" of the problem.

75.    Plaintiff is informed believes and thereon alleges that Defendant JLRNA had authorized dealers to implement a strategy that allowed the dealers to take only limited repair measures which did not properly remedy or resolve the underlying defect. This strategy reduced Defendant JLRNA's warranty spending but did nothing to fix the underlying root causes of the defects. These minor, limited measures merely addressed the symptoms. Moreover, these measures misled customers to believe that the underlying problem had been fixed, when in fact the symptom likely would reoccur on a later date, possibly when the warranty would have expired, typically forcing the additional expenses to be borne by the customer rather than by the dealer.

76.    Defendant JLRNA accumulated a massive database through which it realized that the minor, limited work it was authorizing was inadequate to properly repair these defective engines, and major repairs, including engine replacement, were necessary to address these defects.

77.    Defendant JLRNA continued its practice of only authorizing minor, ineffective repairs of these Engine Defects. Defendant JLRNA unfairly benefitted by this practice because JLRNA knew that after the warranty expired, the vehicle owner, rather than JLRNA, would have to pay for all future repairs.

78.    Those repair strategies were performed on Plaintiff's vehicle. Defendant JLRNA represented that the repairs would fix the vehicle, despite its knowledge that the repairs performed would merely postpone the problem in the 3.0L engine until the engine was out of warranty.

79.    Defendant JLRNA still has not notified Plaintiff that the Subject Vehicle suffers from a systemic defect that causes the engine to malfunction.

80.    As a result of Defendant JLRNA's misconduct, Plaintiff has suffered and will continue to suffer actual damages.

12

**COMPLAINT; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, 19TH FLOOR, LOS ANGELES, CA 90067

**PRAYER**

PLAINTIFF PRAYS for judgment against Defendants as follows:

a. For general, special and actual damages according to proof;

b. For restitution;

c. For any consequential and incidental damages;

d. For diminution in value;

e. For punitive damages;

f. For a civil penalty in the amount of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c) or (e);

g. For prejudgment interest at the legal rate;

h. For costs of the suit and Plaintiff's reasonable attorneys' fees pursuant to Civil Code section 1794, subdivision (d),

i. For such other relief as the Court may deem proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action asserted herein.

Dated: June 11, 2025                    STRATEGIC LEGAL PRACTICES, APC

BY: _____

RABIYA TIRMIZI
Attorneys for Plaintiff
NIMA FAGHIRZADEH

13

**COMPLAINT; JURY TRIAL DEMANDED**